Jon Weiner
jweiner@nw-attorneys.com
VAMES / WANG
600 NW Fariss Road
Gresham, OR  97030
Tel: (503) 399-7001
Fax: 503-573-8373
Of Attorneys for Plaintiff(s)

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

#### Portland Division

MARY PIERCE,

|  |  |
|---|---|
| Plaintiff, | CASE NO.: |
| v. | COMPLAINT – CLAIMS FOR VIOLATION OF CIVIL RIGHTS UNDER THE 8TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION; 42 U.S.C. § 1983; SUPPLEMENTAL STATE LAW CLAIMS. |

COLETTE PETERS, Director, Oregon
Department of Corrections (in her
individual capacity); JOSEPH BUGHER,
Assistant Director, Oregon Department of
Corrections Health Services (in his individual
capacity); PAULA MYERS, Superintendent,
Coffee Creek Correctional Institution (in her
individual capacity), WARREN ROBERTS,
TRACY FOX, LINDA WIDING, VISHAMI
BRADY, SABRINA ROGERS, DUSTIN GORDON,
TERESA HANNON (individuals), and
JANE/JOHN DOES 1-10,

(JURY TRIAL REQUESTED)

Defendants.

Page **1** of **17** – Complaint

_____

The allegations set forth herein are intended to refer to "all times relevant" regardless whether stated in the past, present, or future tense. Plaintiff alleges:

## PRELIMINARY STATEMENT

1.     On August 22, 2013, Mary Pierce was admitted into Coffee Creek Correctional Facility ("CCCF") to serve sentences arising from her conviction on various property felonies. She was released prior to initiation of this action. Plaintiff's claims arise from the conditions of her confinement and violation of her constitutional rights.

## JURISDICTION

2.     This action arises under the constitution and laws of the United States and jurisdiction is based on 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Plaintiff's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

3.     Venue is appropriate in this Court pursuant to 28 USC § 1391(b) because the events or omissions giving rise to this complaint occurred in Washington County, Oregon.

## PARTIES

4.     Plaintiff Mary Pierce ("Ms. Pierce") is a citizen and resident of the State of Oregon. She is a former inmate ("adult in custody" or "AIC") who was imprisoned and restrained of her liberty at the Coffee Creek Correctional Facility ("CCCF"), located in Wilsonville, Washington County, Oregon.

5.   Defendant Colette Peters ("Peters") is the Director of the Oregon Department of Corrections (ODOC). As such, she bears ultimate responsibility for all aspects of ODOC operations, including the provision of adequate medical care for each inmate incarcerated in ODOC facilities. On information and belief, this defendant is a citizen and resident of the State of Oregon. At all times relevant this defendant acted under color of law.

6.   Defendant Joe Bugher ("Bugher") is the Assistant Director of the Oregon Department of Corrections Health Services. As such, he is responsible for implementing, running, and maintaining an adequate healthcare system for all inmates incarcerated in ODOC facilities, including the provision of adequate medical care for each of them. On information and belief, this defendant is a citizen and resident of the State of Oregon. At all times relevant this defendant acted under color of law.

7.   Defendant Paula Myers ("Myers") is the Superintendent of the Oregon State Correctional Institution ("CCCF"). Ms. Myers operates OSCI and is responsible for all aspects of administration – including the provision of medical care to AIC's. On information and belief, this defendant is a citizen and resident of the State of Oregon. At all times relevant Ms. Myers, her subordinates, and her agents acted under color of law.

8.      Defendant Dr. Warren Roberts was the Medical Director for the Oregon Department of Corrections ("DOC") at the time Ms. Pierce was detained at CCCF. On information and belief, this defendant is a citizen and resident of the State of Oregon. Dr. Roberts personally provided medical care to Ms. Pierce and had input into her care. Dr. Roberts also ordered nurses to confiscate Ms. Pierce's medically necessary supplies without justification. Dr. Roberts is a board-certified neurosurgeon and understands the risks and dangers of failing to provide adequate care to a patient with the spine-related serious medical condition suffered by plaintiff.

This defendant was aware of plaintiff's medical condition, and the fact that plaintiff was not receiving adequate treatment for that condition, but in a continuing act of deliberate indifference failed to take the steps necessary to correct that deprivation. At all times relevant, Dr. Roberts acted under color of law.

9.      Defendant Tracy Fox, NP was a licensed Registered Nurse (RN) and Nurse Practitioner who provided medical services at CCCF at the time Ms. Pierce resided there. On information and belief, this defendant is a citizen and resident of the State of Oregon. Ms. Fox was one of the main prescribing providers for Ms. Pierce and personally provided medical care to her. Ms. Pierce frequently sent communications to Ms. Fox, pleading for assistance with her symptoms. This defendant was aware of plaintiff's serious medical condition, and the fact that plaintiff was not receiving adequate treatment for that condition, but in a continuing act of deliberate indifference failed to act. At all times relevant, Ms. Fox acted under color of law.

10.     Defendant Linda Widing, DO is a citizen and resident of the State of Oregon. Dr. Widing, a physician, personally provided medical care to Ms. Pierce and had input into her care. This defendant was aware of plaintiff's medical condition, and the fact that plaintiff was not receiving adequate treatment for that condition, but in a continuing act of deliberate indifference failed to act. At all times relevant, Dr. Widing acted under color of law.

11,     Defendant "Vishami Brady" is a citizen and resident of the State of Oregon. This defendant worked as CCCF's triage nurse, personally provided medical care to Ms. Pierce, and had input into her care. This defendant was aware of plaintiff's serious medical condition, and the fact that plaintiff was not receiving adequate treatment for that condition, but in a continuing act of deliberate indifference failed to act. At all times relevant, this defendant acted under color of law.

Page **4** of **17** – Complaint

12.     Defendants Sabrina Rogers, Dustin Gordon, and Teresa Hannon were nurses (RNs and/or CNA's) who worked at CCCF, provided care to plaintiff, and had input into her care. These defendants were aware of plaintiff's medical condition, and the fact that plaintiff was not receiving adequate treatment for that condition, but in a continuing act of deliberate indifference failed to act. On information and belief, each of these defendants is a citizen and resident of the State of Oregon. At all times relevant, these defendants acted under color of law.

OVERVIEW

13.     Plaintiff suffered from a significant spine-related condition that resulted in severe, persistent, debilitating pain and substantial impairment of multiple basic bodily functions. Individually, and collectively, the medical care providers included herein were aware of petitioner's condition and its effect on her. In spite of that awareness, in a continuing display of deliberate indifference these defendants failed to act because they simply did not care.

14.     Plaintiff was denied timely treatment for her serious medical condition in a multitude of ways. When she needed a wheelchair she was denied one. When she was finally provided one she was denied a caregiver to assist her in using it and as a result experienced several serious falls. Inmates and staff were prohibited from assisting plaintiff with using her wheelchair, even in instances when plaintiff was required to wheel herself long distances within the prison at the cost of significant pain.

15.     Plaintiff was denied much-needed medication and when she was able to obtain such medication it was discontinued and/or delayed without adequate medical justification.

16.     Plaintiff required various types of medical equipment in order to manage the symptoms of her condition, but (like the medication) that equipment was denied, discontinued, and/or delayed without adequate medical justification.

17.     Upon information and belief, one or more of the adverse actions described below resulted from discriminatory animus motivated by plaintiff's attempts (in both administrative and judicial forums) to obtain adequate medical care and vindicate the state and federal constitutional rights set forth herein.

18.     Plaintiff's claims arise from the conditions of her confinement and violation of her clearly established constitutional rights.

19.     Plaintiff exhausted all available administrative remedies prior to the filing of this action.

## FACTS

20.     Plaintiff has had a series of herniated lumbar intervertebral disc events (2017-2019) which have caused long-term damage to several spinal nerve roots within her lumbar spine. She has undergone three major spinal surgeries at Legacy Emanuel Hospital ("Legacy") -- two "discectomies" and one "laminectomy"-- since 2017. Her formal diagnoses have included "cauda equina syndrome." As a result of her condition plaintiff has been afflicted with persistent severe debilitating lower back pain, left foot drop (i.e., inability to raise the toes of the left foot when attempting to walk), left leg weakness, lower body partial paralysis, and bowel and bladder incontinence. She has had at least five related urinary tract infections.

**Plaintiff's 1st Spinal Surgery**

21.     Plaintiff received her first spinal surgery on June 7, 2017. On that date, plaintiff was transported to Legacy Emanuel Hospital ("Legacy"). Magnetic Resonance Imaging (MRI) studies revealed a "large central herniation (of the L4-5 intervertebral disk) with resultant severe central canal narrowing." This is consistent anatomically with the most common cause of cauda

equina syndrome and the symptoms experienced by plaintiff. "Discectomy" spinal surgery was performed on plaintiff that same day.

22.     Upon plaintiff's discharge from Legacy after the June 7, 2017 discectomy, her discharge assessment indicated she should receive physical therapy "to increase strength, activity tolerance, and functional independence." Her discharge instructions provided that plaintiff's physical therapy should include "Bed mobility, Transfer training, Gait training, Balance training, Therapeutic activities, Therapeutic exercise." In spite of that order, what little physical therapy plaintiff received was significantly delayed to plaintiff's detriment, inadequate, and largely ineffective.

**Plaintiff's 2nd Spinal Surgery**

23.     On October 24, 2018, plaintiff was again admitted to Legacy due to recurrent herniation of her L4-L5 disc and correlating symptoms of cauda equine syndrome. Discectomy spinal surgery was again performed.

**Plaintiff's 3rd Spinal Surgery**

24.     Plaintiff was once more admitted to Legacy on November 22, 2019. She had been experiencing urinary incontinence, increased back pain, difficulty ambulating, increased left lower extremity pain and weakness, and groin-area numbness ("saddle anesthesia"). Plaintiff reported that her "left leg is dead." "Laminectomy" spinal surgery was performed at her L3-L4 disc. Notes by Dr. Arian Mintz indicate "Central and leftward broad-based disc protrusion and thickened posterior ligaments are again identified. The overall mass effect on the thecal sac and nerve roots of the cauda equine have progressed in the interim with moderately severe central canal stenosis now present."

Page **7** of **17** – Complaint

25.    Since her discharge from that hospital stay, plaintiff continued to suffer partial paralysis at her left lower extremity (necessitating the use of a wheelchair), extreme debilitating pain, left lower limb weakness, and urine/fecal incontinence.

**Plaintiff Receives Treatment at OHSU on December 14, 2019**

26.    On December 14, 2019, plaintiff was admitted to Oregon Health Sciences University (OHSU). Based on her history and an examination, her initial diagnoses included (but were not limited to) cauda equina syndrome, sciatica, discitis, spinal abscess, and disc herniation. The hospital's Emergency Department's notes indicated that plaintiff presented with baseline back pain, saddle paresthesia, urinary & bowel incontinence, lower left extremity weakness, lower left extremity numbness, and progressive/worsening back, LLE,and RLE pain.  An MRI administered at that time disclosed "L4-5: There is severe bilateral neuroforaminal stenosis secondary to diffuse disc bulge and bilateral facet hypertrophy, similar to prior."

27.    OHSU Physician's Assistant PA-C David Lawrence indicated in his December 2014 chart notes the following:

 "*After speaking with her provider at her penitentiary, there may be some concerns regarding secondary gain. She also continues to request  documentation in her medical record that is contrary to her workup to assist with expedited commutation of her prison sentence*." (emphasis in original).

 The impact of that statement on PA-C Lawrence is obvious and immediate. In the same paragraph, this nurse practitioner opines that "*I would expect to see profound atrophy at her LLE given about 1 year of paralysis, but this is not the case.*" (emphasis in original). Such emphasis appears nowhere else in PA-C Lawrence's notes (or any of the other OHSU records relating to this hospital stay). Later in the medical records,

Page **8** of **17** – Complaint

opinions began to pop up for the first time that plaintiff's left lower extremity symptoms

are not explained by her lumbar MRI findings.

28.     Upon information and belief, the "provider at her penitentiary" was Defendant Fox.

**Additional Facts**

29.     One of the more uncomfortable and un-hygienic aspects of plaintiff's condition is that it

requires the patient to insert her fingers into her vagina in order to initiate urination and/or

defecation. Insertion of the fingers allows the patient to push against the posterior wall of the

vagina, displacing the anterior wall of the rectocele posteriorly into its "more-normal" position.

In order to effectuate urination and defecation plaintiff must engage in this manipulation.

30.     Insertion of bare fingers into the vagina under these circumstances can cause recurrent

urinary tract infections (UTI's). This is the case for plaintiff, who has experienced at least five

such UTI's as a result of having to perform these manipulations. Plaintiff needs to insert urinary

catheters into her urethra in order to allow urination.

31.     Plaintiff also needs to use sterile gloves when performing any of these procedures order

to prevent (or decrease the incidence of) recurring UTI's. However, defendant has failed to

consistently provide them in quantities sufficient to accommodate her needs. Without this basic

health safety equipment, plaintiff  has needlessly suffered  recurring UTI's and the substantial,

unjustifiable excess risk of additional UTI's, other infections, fever, sepsis, serious physical

injury due to falls, delirium, and death.

32.     As a result of plaintiff's physical impairment, the impact of which has been greatly

exacerbated by defendant's above-described deliberate indifference to plaintiff's serious medical

needs, plaintiff's ability to stand, walk, arise from a chair, transfer to her bunk, arise from her

bunk, urinate, defecate, care for herself, climb steps, think, concentrate, interact with others, and sleep have each become substantially limited.

33.     A physical therapist would have been able to work with plaintiff toward improving function and ameliorating the possibility of additional falls. "Foot drop" is a common and particularly serious problem with regard to fall risks. Unfortunately, due to defendants' actions (or lack thereof) these risks came to fruition in plaintiff's case. Physical therapy could have helped strengthen the muscles that raise plaintiff's toes and allowed her to learn compensatory movements that would helped her to avoid falls. Unfortunately, defendants failed to timely provide plaintiff with physical therapy, thereby adversely impacting her prospects for recovering function.

**Deliberate Indifference**

34.     Defendants were aware of a substantial risk of harm (including pain) to Ms. Pierce through information from the following sources:

       a.     Their personal observations of Ms. Pierce;

       b.     Information provided to them by Ms. Pierce;

       c.     Information provided to them by inmates incarcerated with Ms. Pierce;

       d.     Information provided to them by other CCCF employees;

       e.     Information obtained from external hospital visits, doctor's appointments, and surgery notes;

       f.     Other information obtained during the course of the time Ms. Pierce was held in custody at CCCF;

      g.      Training, standards, and experience informing them of the treatment necessary to adequately address Ms. Pierce's serious medical condition and avoid related illness (including sepsis), infection, and injury;

      h.      All the experience, foresight, proactivity, awareness, monitoring, and skill necessary for licensed healthcare professionals, to the degree any of it was actually applied to Ms. Pierce's case.

35.     In spite of objective medical evidence supporting plaintiff's repeated assertions that she continued to suffer from persistent, severe, debilitating pain, and contrary to plaintiff's documented history of medical complications arising from her condition corroborating those assertions, defendants without medical justification discontinued all of plaintiff's pain medications (with the exception of Tylenol, which is wholly inadequate to address her pain) and refused to provide plaintiff with a caregiver/helper to assist her in the performance of her basic life functions.  Defendants were aware of the pain, discomfort, and adverse medical and physical impact of these actions, but simply did not care.

36.     In spite of objective evidence supporting Ms. Pierce's repeated assertions that she suffered from persistent, severe, debilitating pain necessitating assistance in the use of the wheelchair she was finally provided, and contrary to objective medical evidence supporting Ms. Pierce's documented serious medical condition corroborating those assertions, defendants without medical justification refused to allow Ms. Pierce to have a caregiver/orderlie to assist her in the use of that wheelchair. Defendants unnecessarily caused Ms. Pierce to endure long journeys down the institution's hallways, rather than providing an accommodation that would avoid the needless infliction of the above-described pain. It was absolute agony for Ms. Pierce to endure these journeys. Defendants knew all of this and simply did not care.

37.    In spite of objective medical evidence to the contrary, defendants denied plaintiff the use of a wheelchair.  As noted above, when one was finally provided, defendants prohibited staff and other AIC's from assisting plaintiff in her use of the wheelchair. By so doing, defendants unnecessarily caused plaintiff to endure long journeys down the institution's hallways, rather than providing an accommodation that would avoid the needless infliction of significant pain. Defendants were aware of all of this, but simply did not care.

38.    In spite of documented bowel problems relating to her condition, and plaintiff's participation in the institution's "bowel program," which was necessary to address the serious medical needs arising from those bowel problems, defendant without medical justification terminated plaintiff from that program. Defendants were aware of the pain, discomfort, and adverse medical and physical impact of these actions, but simply did not care.

39.    Defendants sabotaged Ms. Pierce's efforts to obtain care at OHSU by inappropriately and maliciously making false statements to OHSU's medical team, in an attempt to convince them that Ms. Pierce had ulterior motives invalidating her cries for help. By pushing their own narrative of Ms. Pierce and ignoring her pleas, the medical team at CCCF were deliberately indifferent to her suffering and in fact intentionally and maliciously interfered with her care.

40.    Defendants consistently exhibited deliberate indifference to Ms. Pierce's serious medical needs, ignored the overwhelming probability that her symptoms would become permanent absent immediate treatment, discounted the risk of physical injury due to fall, ignored numerous UTI's and the risk of additional UTI's and other serious (even life threatening) diseases or illnesses, and were unmoved by her ongoing severe, persistent, debilitating pain. Contrary to the orders, recommendations, and prescriptions of outside physicians, defendants refused to provide medication, accommodation, or treatment necessary to address Ms. Pierce's serious medical

needs. Defendants were aware of those orders, recommendations, and prescriptions, and knew the consequences of ignoring them, but simply chose to ignore them anyway.

41.     The hardship visited upon plaintiff by defendant's deliberate indifference goes far beyond that experienced generally by incarcerated inmates. In general, inmates do not lose the ability to control urination and defecation, experience lower limb weakness and partial paralysis, or experience severe, persistent, debilitating pain as the result of their incarceration. Generally, AIC's do not experience serious medical issues (and related pain) of the magnitude experienced by plaintiff. Most inmates who walk into prison do not have to exit by wheelchair because their prison failed to arrange for timely medical treatment, medication, or accommodation. For the most part, upon exiting prison most inmates enjoy the same capacity to urinate and defecate that they had when they entered. The hardship visited upon plaintiff by defendants' deliberate indifference goes far beyond that generally experienced by incarcerated inmates.

42.     The medical conditions described above constitute serious medical needs. The foregoing acts and/or omissions of defendant in failing to provide medication, diagnosis, treatment, accommodation, and equipment necessary to treat plaintiff's above-described spinal condition (and other related medical conditions) constitute deliberate indifference to plaintiff's serious medical needs, resulting in cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution (as applied to the States via the Fourteenth Amendment to the United States Constitution) and Article I, § 16, of the Oregon Constitution.

43.     Ms. Pierce's injuries, suffering, and loss of function were completely avoidable and directly attributable to the actions and inactions of the defendants. Defendants were aware of Ms. Pierce's serious medical needs and the dangers attendant thereto, but they simply did not care.

## FIRST CLAIM FOR RELIEF

### (Civil Rights Claim – 14th and/or 8th Amendments – 42 USC § 1983)

### (All Defendants)

44.     Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 43, above.

45.     Defendants Colette Peters, Joseph Bugher, Paula Myers, Warren Roberts, Tracy Fox, Linda Widing, Vishami Brady, Sabrina Rogers, Dustin Gordon, Teresa Hannon, and Jane/John Does 1-10 (collectively "individual defendants"), and each of them, were deliberately indifferent to plaintiff's serious medical needs and his rights under the Fourteenth and/or Eighth Amendments of the U.S. Constitution.

46.     As a direct result of the actions and inactions of the defendants, plaintiff suffered the harm described herein. If defendants had taken prompt appropriate medical action, much if not all of that harm would have been avoided.. As a direct result of the actions and inactions of defendants, experienced the pain, suffering, loss of function, and other foreseeable harm. Plaintiff has suffered lost wages, substantial impairment in multiple major life functions (including the ability to work), and a significant decrease in her current and future earning capacity. She has incurred substantial expenses for medical care and will continue to incur such expenses for the rest of her life. Plaintiff is entitled to economic and non-economic damages in an amount to be determined at trial.

47.     The defendants were recklessly indifferent to plaintiff's civil rights and callously disregarded her health physical safety. Punitive damages should be awarded in an amount to be determined at trial.

48.    For claims arising under 42 U.S.C. 1983, plaintiff is entitled to recover reasonable attorney fees and costs of litigation pursuant to 42 U.S.C. 1988.

### SECOND CLAIM FOR RELIEF

### (Civil Rights Claim – 14th and/or 8th Amendments – 42 USC § 1983)

### (Supervisory Liability – Defendants Peters, Bugher, Myers, and Roberts)

49.    Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 48 above.

50.    Defendants Peters, Bugher, Myers, and Roberts ("Supervisory Defendants"), in their supervisory capacities, were aware of the policies, customs or practices , described above, that led to plaintiff's harm. They were aware that said policies, customs or practices created a substantial risk of causing significant harm to  plaintiff and other AICs, by endangering their serious medical needs.  Despite their knowledge, said supervisors allowed, approved of and  ratified said policies, customs or practices. These defendants were deliberately indifferent to plaintiff's serious medical needs and her rights under the Fourteenth and/or Eighth Amendments to the U.S. Constitution.

51.    Defendants Peters, Bugher, Myers, and Roberts, in their supervisory capacities, failed to adequately train, monitor, and supervise the other defendants. These Supervisory Defendants were aware that the failure to train and monitor as set forth above created a substantial risk of causing harm to Clackamas County inmates.

52.    As a direct result of the actions and inactions of the defendants, plaintiff suffered the harm described herein. If defendants had taken prompt appropriate medical action, much if not all of that harm would have been avoided.. As a direct result of the actions and inactions of defendants, experienced the pain, suffering, loss of function, and other

foreseeable harm. Plaintiff has suffered lost wages, substantial impairment in multiple major life functions (including the ability to work), and a significant decrease in her current and future earning capacity. She has incurred substantial expenses for medical care and will continue to incur such expenses for the rest of her life. Plaintiff is entitled to economic and non-economic damages in an amount to be determined at trial.

53.    The defendants were recklessly indifferent to plaintiff's civil rights and callously disregarded her health physical safety. Punitive damages should be awarded in an amount to be determined at trial.

54.    For claims arising under 42 U.S.C. 1983, plaintiff is entitled to recover reasonable attorney fees and costs of litigation pursuant to 42 U.S.C. 1988.

## THIRD CLAIM FOR RELIEF

### (Negligence)

55.    Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 54, above.

56.    The actions of defendants Colette Peters, Joseph Bugher, Paula Myers, Warren Roberts, Tracy Fox, Linda Widing, Vishami Brady, Sabrina Rogers, Dustin Gordon, Teresa Hannon, and Jane/John Does 1-10 (collectively "individual defendants"), and each of them, were negligent.

57.    Notice pursuant to the Oregon Tort Claims Act was provided as prescribed by law.

WHEREFORE, Plaintiff prays for judgment as follows:

**On her First Claim for Relief**, for judgment against defendants Colette Peters,

Joseph Bugher, Paula Myers, Warren Roberts, Tracy Fox, Linda Widing, Vishami Brady,

Page **16** of **17** – Complaint

Sabrina Rogers, Dustin Gordon, Teresa Hannon , and Jane/John Does 1-10, and each of them, for economic damages in an amount to be determined at trial, noneconomic damages in an amount to be determined at trial, and punitive damages in an amount to be determined at trial, and necessarily and reasonably incurred attorney fees and costs pursuant to 42 U.S.C. 1988;

**On her Second Claim for Relief**, for judgment against defendants Peters, Bugher, Myers, and Roberts, and each of them, for economic damages in an amount to be determined at trial, noneconomic damages in an amount to be determined at trial, punitive damages in an amount to be determined at trial, and  necessarily and reasonably incurred attorney fees and costs pursuant to 42 U.S.C. 1988;

**On her Third Claim for Relief**, for judgment against defendants Colette Peters, Joseph Bugher, Paula Myers, Warren Roberts, Tracy Fox, Linda Widing, Vishami Brady, Sabrina Rogers, Dustin Gordon, Teresa Hannon, and Jane/John Does 1-10, and each of them, for economic damages in an amount to be determined at trial, noneconomic damages in an amount to be determined at trial, and necessarily and reasonably incurred costs.

DATED this 22nd Day of November, 2021.

*/s/ Jon Weiner*
Jon Weiner, OSB # 993944
VAMES/WANG
600 NW Fariss Road
Gresham, OR  97030
Of Attorneys for Plaintiff