# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARY PIERCE**, | Case No. 3:21-cv-1693-JR |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **COLLETTE PETERS**, Director, Oregon Department of Corrections (in her individual capacity); **JOSEPH BUGHER**, Assistant Director, Oregon Department of Corrections Health Services (in his individual capacity); **PAULA MYERS**, Superintendent, Coffee Creek Correctional Institution (in her individual capacity); **WARREN ROBERTS**, **TRACY FOX**, **LINDA WIDING**, **VISHAMI BRADY**, **SABRINA ROGERS**, **DUSTIN GORDON**, **TERESA HANNON** (individuals), and **JANE/JOHN DOES 1-10**, | |
| Defendants. | |

Drake Aehegma, DRAKE AEHEGMA ATTORNEY AT LAW LLC, P.O. Box 8404, Portland, OR 97207. Of Attorneys for Plaintiff.

Jennifer A. Street, GLASCOCK STREET WAXLER LLP, 6720 S Macadam Ave., Suite 125, Portland OR 97219. Of Attorneys for Defendant Warren Roberts (in his individual capacity).

Brian Epley, Jonathan W. Monson, and Nicole A.W. Abercrombie, CABLE HUSTON LLP, 1455 SW Broadway, Suite 1500, Portland, OR 97201. Of Attorneys for Defendant Joseph Bugher (in his individual capacity).

Dan Rayfield, Oregon Attorney General; Dylan J. Hallman, Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 100 SW Market St., Portland, OR 97201; Sean Kallery, Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 1162 Court St. NE, Salem, OR 97301. Of Attorneys for Defendants Collette Peters, Paula Meyers, Tracy Fox, Linda Widing, Vishami Brady, Sabrina Rogers, Dustin Gordon, and Teresa Hannon (in their individual capacities).

**Michael H. Simon, District Judge.**

Plaintiff Mary Pierce has sued Defendants, who are current and former employees of the Oregon Department of Corrections ("ODOC"), under 42 U.S.C. § 1983, alleging that they violated her Eighth and Fourteenth Amendment rights by demonstrating deliberate indifference to her medical needs while she was in their custody. Defendant Dr. Warren Roberts recently moved for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure to forbid inquiry into an internal ODOC investigative report (the "Report") during a deposition. ECF 46. U.S. Magistrate Judge Jolie A. Russo reviewed the investigative report *in camera*, ECF 53, and granted Defendant Roberts' motion, ECF 54. Now before the Court are Pierce's objections to Judge Russo's Orders. ECF 55. For the reasons explained below, the Court sustains the objections.

## STANDARDS

### A.  Objections to Orders of Magistrate Judge

Rule 72 of the Federal Rules of Civil Procedure allows a magistrate judge to "hear and decide" all referred pretrial matters that are "not dispositive of a party's claim or defense." Fed. R. Civ. P. 72(a). When a party timely objects to a magistrate judge's determination of a non-dispositive matter, the district judge may reject that determination only when the magistrate judge's order is either clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "This standard requires the District Court to review findings of fact for clear error and to review matters of law *de novo*." *adidas America, Inc. v. Fashion Nova, Inc.*, 341 F.R.D. 263, 265 (D. Or. 2022) (quoting *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th

PAGE 2 – OPINION AND ORDER

Cir. 2019)). "An order is contrary to the law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* (quoting same).

## B.  Protective Order

Rule 26(c) of the Federal Rules of Civil Procedure permits parties to "move for a protective order." "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by "forbidding the disclosure or discovery" of documents or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." *See* Fed. R. Civ. P. 26(c)(1)(A), (D). Good cause exists to issue a protective order if the party seeking protection shows that "specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). The district court has "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 36 (1984). Rule 26(b)(1) provides that parties "may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added).

## DISCUSSION

Pierce argues that Judge Russo clearly erred because she did not make the findings required to justify Roberts' invocation of attorney-client privilege or work-product protections, nor did she make an express determination about waiver.[1] Even if the Report were protected by

---

[1] Pierce purported to move to compel production of the Report in her response to Roberts' underlying motion for protective order. *See, e.g.*, ECF 51 at 3, 9, 10, 14. A response is not the proper vehicle by which to move to compel production, however, so the Court declines to consider this argument. *See* Local Rule 7-1(b).

some form of privilege, Pierce also objects that the scope of the Protective Order is overbroad, because it bars any questions about the Report, which is available in redacted form publicly and has been discussed by several news media outlets.[2] Finally, Pierce argues, for the first time in her objections, that Roberts has not shown that he is the proper party to claim privilege or work product protection over the Report. The Court exercises its discretion to consider this new argument raised for the first time in Pierce's objections. *See Jones v. Blanas*, 393 F.3d 918, 935 (9th Cir. 2004) (discussing the district court's discretion to consider new arguments raised in objections).

      For context, Judge Russo's Orders read:

>      ORDER issued by Magistrate Judge Jolie A. Russo: The Court reviewed, *in camera*, the defendants' 84-page document submission and finds the document protected by attorney-client and work product privileges. The document will not be released to the plaintiff, nor is the plaintiff permitted to question witnesses about the document.

>      ORDER issued by Magistrate Judge Jolie A. Russo: Defendant Warren Roberts, MD's Motion for Protective Order to Limit Deposition 46 is Granted.

ECF 53; ECF 54.

---

[2] The State of Oregon released the redacted Report to *Oregon Public Broadcasting* ("OPB"). ECF 51-1 (Exhibit 4) at 24. OPB first requested a copy of the Report on December 6, 2024. *Id.* ODOC "denied, citing attorney-client privilege." *Id.* OPB made a second request for the Report after ODOC fired Roberts and another employee; ODOC then sent OPB "a redacted copy of the Report." *Id.* In addition to reviewing the full Report *in camera*, the Court also takes judicial notice of the availability of the redacted Report in the public record. The redacted Report was also published by *The Oregonian* on February 5, 2025, and is still available online. *See Munoz v. State of Oregon*, Case No. 6:22-cv-1348-SI, ECF 41 (Feb. 25, 2025) at 7 n.1.

PAGE 4 – OPINION AND ORDER

The Court inspected the Report *in camera* to aid in its evaluation of Pierce's objections.[3]

Based on its *in camera* review, the Court concludes that Roberts has no standing to assert

attorney-client privilege or work product protections over the Report. Accordingly, the Court

declines to address Pierce's remaining objections.[4]

**A. Attorney-Client Privilege**

"In federal question cases, federal privilege law applies." *NLRB v. N. Bay Plumbing,*

*Inc.*, 102 F.3d 1005, 1009 (9th Cir. 1996); *see also* Fed. R. Evid. 501.[5] The party asserting

attorney-client privilege bears the burden of proving that the privilege applies and has not been

waived. *See United States v. Ruehle*, 583 F.3d 600, 607-08 (9th Cir. 2009). Additionally, "the

attorney-client privilege is strictly construed." *Id.* at 607 (quoting *United States v. Martin*, 278

F.3d 988, 999 (9th Cir. 2002)).

---

[3] The Court also takes judicial notice of the same motion filed in *Munoz v. State of Oregon*. *See Munoz*, 6:22-cv-1348-SI, ECF 70 (Nov. 6, 2025), at 2 ("Dr. Roberts requests that this Court take judicial notice of the same motion filed in *Pierce v. Peters, et al.* . . . .").

[4] Although the Court declines to reach Pierce's substantive privilege arguments, the Court disagrees with Pierce's procedural argument that Judge Russo's failure to make explicit factual findings, alone, constitutes legal error. *See Coleman v. Schwarzenegger*, 2008 WL 2468492, at *4 (E.D. Cal. Jul. 17, 2008) ("An absence of detailed discussion does not meet the 'clearly erroneous or contrary to law' standard."). Where a magistrate judge's order does not provide detailed factual findings supporting a privilege determination, a district judge can review the at-issue documents and privilege logs *in camera* to see whether the magistrate judge's privilege determination is supported. In *Coleman*, for example, the Eastern District of California upheld a magistrate judge's privilege determination that did not "state specifically why the privilege did not apply to each document," because the ultimate determination was supported by the district court's "*in camera* inspection of the documents at issue." *See id.*

[5] Pierce and Roberts invoke Oregon law in their briefing. Because federal common law applies, the Oregon cases are irrelevant. The propositions stated by each party, however, are non-frivolous arguments under federal common law. To promote judicial economy, the Court treats the parties' arguments as if they were raised under federal common law.

In arguing that the Report is privileged, Roberts emphasizes that it is marked "Confidential: Subject to Attorney-Client Privilege." *See* ECF 46 at 4.[6] But simply marking a document privileged does not make it so. Privilege is not a fixed quality; it is a personal evidentiary immunity designed to "encourage full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The evidentiary privilege thus shields from disclosure only those confidential communications between attorneys and their clients made for the purpose of obtaining legal advice. *See United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (laying out eight-part test for privilege).

Because the rationale of the privilege is "to encourage clients to make full disclosures to their attorneys," *see Fisher v. United States*, 425 U.S. 391, 403 (1976), the privilege belongs to the client, *see Chirac v. Reinicker*, 24 U.S. (11 Wheat) 280, 294 (1826) ("The privilege, indeed, is not that of the attorney, but of the client . . . ."); *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888) ("But the privilege is that of the client alone . . . ."). It follows that "the privilege can be invoked only at the instance of the client." *United States v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988), *overruled in part on other grounds by Guam v. Ignacio*, 10 F.3d 608 (9th Cir. 1993). Thus, the "attorney-client privilege applies only if the party claiming the privilege 'is or sought to become a client.'" *Id.* (quoting *United States v. Osborn*, 409 F. Supp. 406, 409 (D. Or. 1975), *aff'd in part & rev'd in part on other grounds*, 561 F.2d 1334 (9th Cir. 1977)). That is why the "party asserting the attorney-client privilege has the burden of establishing the existence of an attorney-client relationship *and* the privileged nature of the communication." *Graf*, 610 F.3d at 1156 (cleaned up; emphasis in original). And because only the client can invoke the privilege, "[a]

---

[6] Roberts also argues that all communications between any ODOC employee and Attorney Jill Goldsmith are privileged. *See* ECF 61 at 3-4. Even if that were true, that privilege would be ODOC's to raise, not Roberts'.

third party may not invoke another's attorney-client privilege in order to avoid disclosure of information." *Takiguchi v. MRI Int'l, Inc.*, 2016 WL 614393, at *3 n.5 (D. Nev. Feb. 16, 2016); *see also* EDNA SELAN EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE 25 (7th ed., vol. I, 2025) ("Someone who is not the client may not raise, or for that matter waive, the attorney-client privilege belonging to someone else.").

Here, Roberts "has failed to bear his burden of establishing the facts underlying the existence of an attorney-client" relationship. *See Layton*, 855 F.2d at 1406. Attorney Jill Goldsmith wrote the Report. Roberts has made "no showing that he was or sought to become [Goldsmith's] client" at any point in time, let alone while she was authoring the Report. *See id.* Rather, Goldsmith was expressly retained by the Oregon Department of Justice ("ODOJ") on behalf of ODOC to write the Report. Roberts is not currently employed at ODOC and is sued only in his individual capacity. The State of Oregon is not party to this suit and has not intervened to assert its privilege.[7] "The privilege may only be invoked by the client of an attorney," and Roberts "has failed to show that he is authorized to invoke the privilege on behalf of" ODOC.[8] *See id.*

---

[7] Counsel for the Oregon Department of Justice is representing Collette Peters, Paula Meyers, Tracy Fox, Linda Widing, Vishami Brady, Sabrina Rogers, Dustin Gordon, and Teresa Hannon in their individual capacities. None of those Defendants have joined Roberts' motion.

[8] Even if Roberts could have, in his former position, invoked privilege over the Report on behalf of the State, he lost that ability when he was fired. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985) ("Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties."); *Fitzpatrick v. Am. Int'l Grp., Inc.*, 272 F.R.D. 100, 108 (S.D.N.Y. 2010) (collecting cases for the proposition that "the federal courts have rejected the notion that a former director or officer, even if previously vested with the power to exercise the privilege while a corporate official . . . may subsequently claim any authority to exercise or waive the privilege at all").

Roberts nonetheless asserts that ODOC "represented" him when they commissioned and later released the Report, such that he has standing to assert privilege over the Report. *See* ECF 52 at 4; ECF 61 at 5 ("As the State is not the only privilege holder, especially as the State was actively representing Defendant Roberts at that time, the disclosure [of the Report] was a violation of privilege carried out by an entity that had an active conflict of interest.").[9] That ODOJ or Goldsmith represented Roberts at that time is wholly unsupported. The mere fact that Goldsmith represented ODOC while Roberts was an employee does not establish that Roberts was Goldsmith's client. *See Layton*, 655 F.2d at 1406. Roberts also does not assert that any "express agreement for individual representation was made" between him and Goldsmith, or that he ever asked Goldsmith "directly or indirectly to represent him individually." *United States v. Keplinger*, 776 F.2d 678, 700 (7th Cir. 1985); *see also Layton*, 855 F.2d at 1406 (citing *Keplinger* for the proposition that "attorneys representing corporation had no attorney-client relationship with individual employees" under such circumstances).

Nor is there any "evidence in this case that [Roberts] either sought legal advice on an individualized basis" from Goldsmith "or manifested in any way [his] belief that [he was] being represented individually." *See Keplinger*, 776 F.2d at 701. Further, "no individual attorney-client relationship can be inferred without some finding that the potential client's subjective belief" of representation "is minimally reasonable." *Id.* Here, it would be patently unreasonable for Roberts to believe that Goldsmith represented him in his individual capacity when she was representing ODOC and authoring the Report. The purpose of Goldsmith's investigation was to determine whether Roberts retaliated against whistleblowing subordinates. Moreover, Roberts himself

---

[9] Roberts also asserts, without factual support, that ODOC wrongfully released the Report to *OPB* and *The Oregonian*. *See* ECF 61 at 5. Because the Court does not reach the waiver issue, the Court need not address the merits of this argument.

acknowledges that ODOC was in an adversarial posture to him when it created the Report. *See*
ECF 52, 61. In Roberts' own words, ODOC undertook the investigation to "justify the
termination" of Roberts and his supervisor, Joseph Bugher, "and in preparation for potential
employment actions" with them. ECF 61 at 4. Further, Roberts characterizes the Report as a "one
sided, unilaterally prepared, apparent witch-hunt placing significant systemic issues within the
ODOC on [Roberts]." ECF 52 at 5.

Based on the Court's *in camera* review of the Report, Roberts was aware of ODOC and
Goldsmith's adversarial posture towards him during the pendency of the investigation. Indeed,
Goldsmith informed Roberts that she could not keep their conversations confidential. Because
Roberts has provided no basis to infer the existence of an attorney-client relationship between
him and Goldsmith, the Court agrees with Pierce that Roberts has not shown that the privilege is
his to invoke.

## B. Work Product Protection

For the same reasons, Roberts also lacks standing to invoke the protections of the work-
product doctrine. Although the caselaw is less clear than in the context of attorney-client
privilege,[10] it is generally understood that both attorneys and their clients may assert work-

---

[10] Federal courts of appeals generally recognize that the work product protections may be
invoked by the attorney or the client. *See In re Grand Jury Proc.*, 43 F.3d 966, 972 (5th
Cir. 1994) ("In contrast to the attorney-client privilege, the work product privilege belongs to
both the client and the attorney, either one of whom may assert it."); *In re Green Grand Jury
Proc.*, 492 F.3d 976, 980 (8th Cir. 2007) ("Because the work product privilege protects not just
the attorney-client relationship but the interests of attorneys to their own work product, both the
attorney and the client hold the privilege." (quotation omitted)); *In re Grand Jury Proc. #5*, 401
F.3d 247, 250 (4th Cir. 2005) ("[T]he attorney, as well as the client, hold the privilege."); *Moody
v. IRS*, 654 F.2d 795, 801 (D.C. Cir. 1981) ("Unlike the attorney-client privilege, which exists
solely for the benefit of the client, and can be asserted and waived exclusively by him, the work
product privilege creates a legally protectable interest in non-disclosure in two parties: lawyer
and client.").

product protection. *See* EDNA SELAN EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE

WORK-PRODUCT DOCTRINE 1139 (7th ed., vol. II, 2025) ("Obviously, a client may invoke the

work-product doctrine . . . [and] many courts have given the attorney standing to invoke the

work product independently at least when the attorney's interests are not adverse to the client's

interests."). Roberts is neither the attorney who wrote the Report (Goldsmith), nor the client

(ODOC), so he cannot invoke the doctrine.

Additionally, Rule 26(b)(3) of the Federal Rules of Civil Procedure only protects attorney

work product from discovery when the materials were: (1) "prepared in anticipation of litigation

or for trial" and (2) prepared "by or for another party or its representative." Courts in the Ninth

Circuit do not "extend[ ] the work product privilege outside the literal bounds of the rule." *In re*

*Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989). Because the Report was not

prepared by Roberts or his representative, the second element is plainly lacking here. As with

attorney-client privilege, the party asserting the protection of the work-product doctrine has the

burden of demonstrating that the at-issue documents are work product. *See Hernandez v.*

*Tanninen*, 604 F.3d 1095, 1102 (9th Cir. 2010) (recognizing that a withholding party has the

"burden of showing that attorney-client or work product privilege applies to the documents at

---

Although the Ninth Circuit has not so explicitly held, it granted in part a motion to quash
a subpoena issued to an attorney brought by the client. *In re Grand Jury Proceedings*, 867
F.2d 539 (9th Cir. 1989). In so doing, the Ninth Circuit affirmed in relevant part the district
court's decision that "required [the attorney] to testify concerning fact work product but upheld
*her refusal* to testify to opinion work product or mental impressions formulated in the course of
her representation." *Id.* at 541 (quotations omitted; emphasis added). Courts in this circuit have
construed this case as supporting that "both the attorney and the client may invoke the work
product doctrine." *California v. Kinder Morgan Energy Partners, L.P.*, 2009 WL 10668706,
at *3 n.5 (S.D. Cal. Sept. 28, 2009); *see also Pastrana v. Loc. 9509, Commc'ns Workers of Am.,*
*AFL-CIO*, 2007 WL 2900477, at *4 n.6, *5 n.9 (S.D. Cal. Sept. 28, 2007) (same).

issue").[11] Because the Court agrees with Pierce's new argument that Roberts has no standing to raise attorney-client privilege or work product protections, the Order finding that the document is protected by those doctrines, ECF 53, is contrary to the law.

## C. Protective Order

Absent Roberts' showing of privilege or work product, Roberts has not demonstrated good cause sufficient to justify a protective order.[12] Roberts argues that the Report is irrelevant to the claims at issue and is therefore not discoverable under Rule 26. The Report discusses Roberts' delays in providing medical care to ODOC inmates, however, which may help Pierce establish Roberts' knowledge or actions in this § 1983 suit predicated on deliberate indifference.

---

[11] Additionally, the primary purpose of the work-product doctrine is to "prevent exploitation of a party's efforts in preparing for litigation." *Admiral Ins. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989); *see also United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020). Roberts acknowledges that the Report was created by ODOC "in anticipation for any potential employment suit that would be brought" by whistleblower subordinates against ODOC because of Roberts' conduct in the workplace. *See* ECF 52 at 4. Requiring Roberts to produce the Report would reveal nothing about Roberts' or his counsel's litigation strategy in preparing for this case, because the Report reflects advice that ODOC received that is *adverse* to Roberts' interests.

[12] Roberts also suggests that the Report is protected on other privilege grounds, including under Oregon Revised Statutes § 41.675, because it contains "data and statements obtained through the peer review process," "quality-control and quality-assurance privileged information, and protected health information of other Adults in Custody." ECF 70 at 7. As explained, however, federal privilege law applies. And "because the Ninth Circuit has not recognized a peer review privilege under federal common law, no such federal privilege protects from disclosure in discovery the peer review documents at issue in this case." *Roberts v. Legacy Meridian Park Hosp., Inc.*, 299 F.R.D. 669, 673-74 (D. Or. 2014). Nor do the federal courts recognize a patient-physician privilege protecting medical information from discovery. *See Whalen v. Roe*, 429 U.S. 589, 602 n.28 (1977) ("The physician-patient evidentiary privilege is unknown to the common law. In States where it exists by legislative enactment, it is subject to many exceptions and to waiver for many reasons."); *Swan v. Miss Beau Monde, Inc.*, 566 F. Supp. 3d 1048, 1068 (D. Or. 2021) ("[T]he physician-patient privilege is not recognized at federal common law; thus, it does not apply in a lawsuit based on federal question jurisdiction."); *see also Hutton v. City of Martinez*, 219 F.R.D. 164, 167 (N.D. Cal. 2003) ("The physician-patient privilege is not recognized by federal common law, federal statute, or the U.S. Constitution . . ."). None of these privileges cognizable under Oregon law support shielding the Report from discovery.

As Roberts acknowledges, the Report also bears on Roberts' "leadership and working relationships with his colleagues in his department," ECF 46 at 6, which may be facts relevant to establishing supervisory liability for Pierce's alleged injuries and treatments. The Report, thus, is relevant. [13]

Roberts also states that producing the Report would be burdensome "in terms of privacy and prejudice." *Id*. Roberts provides no further argument or support for this contention. Because good cause requires a showing of "*specific* prejudice," these blanket burden invocations are insufficient to justify a protective order. *See Phillips ex rel. Ests. of Byrd*, 307 F.3d at 1210-11 (emphasis added). Finally, to the extent that specific questions about the Report would require Roberts to reveal *his own* privileged conversations with his attorneys about his impending employment action against the State of Oregon (*see* ECF 46 at 7), Roberts can assert *his own* attorney-client privilege or work product protections to protect *those* communications. Roberts has demonstrated no specific prejudice requiring a protective order to preclude disclosure of or questioning about the Report, however, so the Order holding the opposite is contrary to the law.

---

[13] Roberts also argues that the Ninth Circuit in *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 540 (9th Cir. 2020), held that requests aimed at uncovering additional wrongs or collateral matters fall outside the permissible scope of discovery. *See* ECF 46 at 6. *Williams-Sonoma* does not stand for that broad principle, nor is it otherwise helpful to Roberts. In that case, the Ninth Circuit held that "using discovery to find a client to be the named plaintiff before a class action is certified is not within the scope of Rule 26(b)(1)." *In re Williams-Sonoma, Inc.*, 947 F.3d at 540. Specifically, the discovery order in *Williams-Sonoma* was aimed at soliciting clients for claims that "counsel wishe[d] to pursue," but for which he lacked "a lead plaintiff for the class issues . . . so no class had been certified." *Id.* The Ninth Circuit held that the request was not relevant to any party's claims or defenses, and thus that the district court clearly erred in granting it. *See id.* at 539-40. With respect to this case, information in the Report *is* relevant to Pierce's claims and therefore falls within the bounds of Rule 26.

**CONCLUSION**

The Court SUSTAINS Pierce's Objections to Judge Russo's Orders, ECF 55. The Court

DENIES Roberts' Motion for Protective Order, ECF 46.

**IT IS SO ORDERED.**

DATED this 19th day of November, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge